Citation Nr: 1829724 
Decision Date: 07/17/18 Archive Date: 07/24/18

DOCKET NO. 12-15 846 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUES

1. Entitlement to a total rating based on individual unemployability due to service connected disability (TDIU). 

2. Entitlement to service connection for a restrictive/obstructive lung disease claimed as a lung condition, to include bronchitis, as secondary to his service-connected sleep apnea.

3. Entitlement to a rating in excess of 40 percent for degenerative disc disease of the lumbar spine.

4. Entitlement to a rating in excess of 20 percent for spondylosis of the cervical spine. 


REPRESENTATION

Veteran represented by: Wounded Warrior Project


ATTORNEY FOR THE BOARD

Mariah N. Sim, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the in the United States Army from March 2004 to September 2005 with service in Afghanistan. The Veteran also had active duty for training (ACDUTRA) service from July 1979 to September 1979. 

These matters come to the Board of Veteran's Appeals (Board) on appeal from rating decisions issued by Department of Veterans' Affairs (VA) Regional Office (RO) in Des Moines, Iowa. 

This case was previously before the Board in January 2015. At that time, the Board remanded these claims for further development.

In October 2017, additional evidence related to the issue of the Veteran's entitlement to a TDIU was associated with the claims file. As the Board grants entitlement to a TDIU below, adjudication at the RO level of the newly submitted evidence is not necessary, nor is it prejudicial to the Veteran to proceed with an adjudication of the issue. New evidence related to the other three issues on appeal was not submitted.

The issues for entitlement to a disability rating in excess of 40 percent for degenerative disc disease of the lumbar spine and entitlement to a disability rating in excess of 20 percent for spondylosis of the cervical spine are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).
 




FINDINGS OF FACT

1. The Veteran's service-connected disabilities preclude him from securing and following a substantially gainful occupation consistent with his education and occupational background.

2. The Veteran is not shown to have a restrictive/obstructive lung disease, or lung condition to include bronchitis, that is attributable to his active service or secondary to his service-connected sleep apnea. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to a TDIU are satisfied. 38 U.S.C. § 1155 (2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2017).

2. The Veteran does not have a restrictive/obstructive lung disease claimed as a lung condition, to include bronchitis due to disease or injury that was incurred in or caused by active service, or as secondary to service-connected sleep apnea. 38 U.S.C. §§ 1103, 1110, 5107 (2014); 38 C.F.R. §§ 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claims. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107 (2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). Initially, the Board notes that VA issued legally conforming VCAA notice letters.

Additionally, VA's duty to assist contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2017). VA has done everything reasonably possible to assist the Veteran with respect to the claims for benefits in accordance with 38 U.S.C. § 5103A (2014) and 38 C.F.R. § 3.159 (c) (2017). Relevant service treatment and other medical records have been associated with the claims file. Also, the Veteran was afforded a VA examination in June 2015 which is fully adequate for decision-making purposes. Hence, the duties to notify and to assist have been satisfied.

II. TDIU

A TDIU is provided where the combined schedular evaluation for service-connected diseases and disabilities is less than total, or 100 percent. 38 C.F.R. § 4.16(a). VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience, by reason of his service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16. Under 38 C.F.R. § 4.16, if there is only one such disability, it must be rated at 60 percent or more to qualify for benefits based on individual unemployability. If there are two or more such disabilities, there shall be at least one disability rated at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). If the schedular requirements are not met, the Board must consider whether the evidence warrants referral to the appropriate VA officials for entitlement to a total disability rating for compensation purposes based on individual unemployability on an extraschedular basis under the provisions of 38 C.F.R. §4.16(b). See Bowling v. Principi, 15 Vet. App. 1 (2001). 

The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's level of education, special training, and previous work experience, but it may not be given to his age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough; the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). Substantially gainful employment is that employment that is ordinarily followed by the nondisabled to earn their livelihoods with earnings common to the particular occupation in the community where the veteran resides. Moore v. Derwinski, 1 Vet. App. 356 (1991). Marginal employment will not be considered substantially gainful employment. 38 C.F.R. § 4.16(a) (2017). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19 (2015); Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

The Veteran contends he is entitled to a TDIU due solely to his service-connected disabilities. First, as of December 9, 2008, the Veteran met the schedular requirements of 38 C.F.R. § 4.16(a) and therefore consideration of whether referral for consideration of an extraschedular TDIU is not necessary. 

Second, during the period on appeal the Board finds that the Veteran's service-connected disabilities are the cause of his inability to secure or follow substantially gainful employment. In that regard, the evidence shows that the Veteran can secure employment, but due to his service-connected disabilities is unable to maintain employment. 

As early as 2005 the Veteran reported anxiety and social unease which prevents him from maintaining employment successfully. In 2006, the Veteran reported anxiety, difficulty trusting others outside of family, and did not like leaving his home. A May 2006 VA treatment record indicates the Veteran's wife reported that he had anxiety in crowds, a short temper, was easily irritable, and could not keep a job since he returned from Afghanistan. Further, a July 2006 VA treatment record shows that the Veteran reported having "gone through three jobs" since his return from deployment. Throughout the period on review, the Veteran has consistently stated that due to his irritability, anxiety, and other PTSD related symptomatology that he "quit" or "walked out" from his employment because he "can't deal with it," until 2008 when the Veteran stopped working full time. 

A July 2007 employment handicap assessment indicates that the Veteran's ability to secure or follow substantially gainful employment was impaired by his spondylosis, tinnitus, hypertension, PTSD, and diverticulosis. It states that his service connected disabilities contributed substantially to his impairment, that unemployment was outside of the Veteran's control, and that he had not overcome his impairments to employment. The evaluator noted the Veteran suffered from an unstable work history, negative attitudes towards the disabled, a prior or current neuropsychiatric condition, chronic pain, withdrawal from society, and that he had a serious employment handicap. 

With regard to VA Vocational Rehabilitation & Employment (VR&E), the Veteran enrolled in and completed counseling and educational programs with VA VR&E. A July 2007 counseling report indicates that the Veteran reported he began having problems with PTSD resulting in unstable employment. He reported interpersonal issues at work, and only maintaining employment for 3 weeks to 5 months. In August 2007, VA VR&E identified several possible vocations for the Veteran that included auto mechanic, motorcycle mechanic, and welder. An August 2007 counseling report indicates that the Veteran may "be having serious emotional problems and may have frequent mood changes and serious feelings of depression, pessimism and loneliness. He may have problems in work and personal relationships . . . and is extremely difficult to work and live with." In October 2007, the Veteran stated he had lost a job due to personality conflicts, and continued to seek employment without success. Next, in April and May 2008, the Veteran successfully completed VA VR&E certifications in motorcycle mechanics. In March 2009, the Veteran stated he felt he could only handle working part-time. In May 2009, a counseling psychologist for VA VR&E indicated that a suitable vocational outcome for the Veteran was not currently feasible, due to his problems with PTSD. Although the Veteran successfully completed educational courses for vocational rehabilitation, the Board recognizes the circumstances warranting a TDIU in this instance do not stem from physical or educational inability to secure or follow substantially gainful employment, but rather the Veteran suffers from PTSD symptomatology that prevents him from following substantially gainful employment. 

In July 2013, the Veteran submitted a buddy statement from his wife enumerating several disabilities which contributed to the Veteran's unemployability. She stated that the Veteran had pain every day and he was unable to stand, sit, or walk for significant periods of time. Next, the Veteran's wife asserted that the Veteran had a pacemaker which prevented him from performing heavy or labor intensive movements, caused fatigue, dizziness, and prevented him from being around certain equipment. Due to the Veteran's service-connected hypertension the Veteran's wife reports that he could not work in heat, humidity, be around certain chemicals, that he needed oxygen, and could not walk far. She further stated that the Veteran suffered from regular and severe headaches that required bed rest and would prevent him from keeping a job. Lastly, she stated that the Veteran's PTSD was the disability "above all else [that] precludes him... from gainful employment." She stated that the Veteran can get overwhelmed, had trust issues, was impatient, had interpersonal issues that prevented him from maintaining employment, and had anxiety. 

On an undated preliminary independent living assessment, the Veteran was noted to have PTSD symptoms that caused him to isolate. He reported hypervigilance, difficulty being around unfamiliar people and places, and a temper.

Although there is some evidence against the claim, in that a February 2009 VA examination examiner opined that the Veteran's unemployability was not solely related to his service connected disabilities, and that the Veteran was not precluded from sedentary employment, the Board notes that Veteran has spent his entire career in manual labor, that he has never worked in an office, that all of his training and expertise is in manual labor, and that he has no other training or experience. Further, although a January 2016 VA treatment record indicates that the Veteran "enjoys driving [a taxi], but limits the hours he worked," the Board notes that the Veteran still reported being overwhelmed if he worked for extended periods of time. The Veteran's employment records demonstrate a degradation of his ability to maintain gainful employment due to his PTSD symptomatology, in combination with his other service-connected disabilities. For these reasons a TDIU is warranted. 
III. Service connection

As noted in the Board's prior remand, the Veteran contends that his lung condition is attributable to his active service to include as secondary to his service-connected sleep apnea. 

To establish direct service connection, a veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and, (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 . Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. See 38 C.F.R. § 3.310; see also Allen v. Brown, 7 Vet. App. 439 (1995) (en banc).

Pursuant to the Board's remand, the Veteran was afforded a VA examination in connection with his claim in June 2015. With regard to the Veteran's lung condition, the examiner noted that the Veteran suffered from "long-standing morbid obesity which pre-dated" the Veteran's active service and that his morbid obesity was left untreated. Next, the examiner noted that the claimed lung conditions are not caused, affected, or aggravated by sleep apnea. In order for sleep apnea to exacerbate the claimed lung conditions, the sleep apnea must be longstanding and untreated. However, the examiner opined there was no evidence that the sleep apnea had its onset and origin during the Veteran's active service. Rather, the Veteran's morbid obesity was longstanding and untreated. Thus, the examiner opined that the Veteran's lung condition is caused by his morbid obesity. Therefore, the examiner concluded that the Veteran's lung condition is not directly due to service.

The Board finds the June 2015 VA examination to have significant probative weight here. The examiner reviewed the claims file, considered the Veteran's reported history and lay statements, and supported his conclusions with clear rationale. The examiner also addressed the Veteran's contentions in this case and relied on his expertise. 

The Board has considered the Veteran's lay statements. The Veteran is certainly competent to report observable symptoms. Layno v. Brown, 6 Vet. App. 465 (1994); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, although the Veteran is competent to relate that he suffers from symptomatology of a lung condition, he is not competent to provide an opinion as to whether such symptoms are attributable to service, as this is a complex medical determination based upon internal medical processes. It is not capable of lay observation. The Veteran has not contended, and the evidence does not show, that they have the medical expertise to provide such opinions. See Jandreau, 492 F.3d at 1377; Layno, 6 Vet. App. at 465.

The Board is grateful for the Veteran's honorable service. However, given the record before it, the Board finds that evidence in this case does not reach the level of equipoise. See 38 U.S.C. § 5107 (a) ("[A] claimant has the responsibility to present and support a claim for benefits . . . ."); Fagan v. Shinseki, 573 F.3d 1282, 1286 (Fed. Cir. 2009) (stating that the claimant has the burden to "present and support a claim for benefits" and noting that the benefit of the doubt standard in section 5107(b) is not applicable based on pure speculation or remote possibility); Skoczen v. Shinseki, 564 F.3d 1319, 1323-29 (Fed. Cir. 2009) (interpreting section 5107(a) to obligate a claimant to provide an evidentiary basis for his or her benefits claim, consistent with VA's duty to assist, and recognizing that "[w]hether submitted by the claimant or VA . . . the evidence must rise to the requisite level set forth in section 5107(b)," requiring an approximate balance of positive and negative evidence regarding any issue material to the determination).


ORDER

A TDIU is granted.

Service connection for a restrictive/obstructive lung disease claimed as a lung condition, to include bronchitis, as secondary to sleep apnea is denied.


REMAND

Although the Board regrets the additional delay due to this remand, it finds that it is necessary in order to ensure that there is a complete record upon which to decide the Veteran's claim. See 38 U.S.C. § 5103A; 38 C.F.R. § 3.159 (2017). 

Regarding the Veteran's service-connected degenerative disc disease of the lumbar spine, a VA examination was conducted in December 2009. However, the Veteran is seeking a rating in excess of 40 percent for a lumbar spine disability, which requires a diagnosis and opinion with regard to ankylosis. The record is silent with respect to ankylosis of the Veteran's spine. Additionally, given the time that has passed since the Veteran was last examined, the Board finds that a new VA examination must be obtained. 38 U.S.C. § 5103A (d) (2014). 

Regarding the Veteran's service-connected spondylosis of the cervical spine, a VA examination was last conducted in December 2008, seven years ago. Unfortunately, subsequent to that examination, the Court of Appeals for Veterans Claims held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include "range of motion testing" for pain on both active and passive motion [and] weight-bearing and nonweight-bearing and if possible, with range of the opposite undamaged joint." Correia v. McDonald, 28 Vet. App. 158, 170 (2016) (quoting 38 C.F.R. § 4.59 (2017)).

The December 2008 VA examination is silent on the Veteran's pain regarding weight-bearing and nonweight-bearing motion as required by Correia. Therefore, in light of the requirements imposed by the Correia decision, the Board finds that a remand is necessary in order to conduct another VA examination, which includes range of motion testing for pain with weight-bearing, if possible. See Correia, 28 Vet. App. at 170. 

Relevant ongoing medical records should also be requested. 38 U.S.C. § 5103A(c) (2014); see also Bell v. Derwinski, 2. Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim). 

Accordingly, the case is REMANDED for the following action:

1. With any necessary assistance from the Veteran obtain any continuing treatment records thereof. Obtain all outstanding VA treatment records. 
 
2. Schedule the Veteran for VA examinations to address the claims of entitlement to an increased rating for degenerative disc disease of the lumbar spine, and increased rating for spondylosis of the cervical spine. The claims file must be reviewed by the examiner in conjunction with the examination. All indicated tests should be conducted and the results reported. 

The examiner should report all signs and symptoms necessary for evaluating the Veteran's disability under the Schedule for Rating Disabilities, including the frequency, severity, and duration of such symptoms.

The examiner should provide the range of motion in degrees for the Veteran's spine. In so doing, the examiner should test the Veteran's range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain so in the report. 

With regard to range of motion testing, the examiner should report at what point (in degrees) pain is elicited as well as whether there is any other functional loss due to weakened movement, excess fatigability or incoordination. These determinations must be expressed in terms of the additional limitation of motion in approximate degrees due to each functional factor that is present. The examiner should report on whether there is functional loss due to limited strength, speed, coordination or endurance. 

The examiner should also estimate any additional loss of function during periods of flare-up, expressed in degrees of lost motion. Such estimate can be based on the Veteran's description of his limitations during such periods, so that an estimate should be provided, if at all possible, even in the absence of direct observation by the examiner.

The examiner is advised that the Veteran is competent to report limitation during flare-ups.

The examiner should also provide an opinion concerning the impact of the Veteran's disability on his occupational functioning. The examiner should describe the types of limitations the Veteran experiences as a result of his disability.

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. As it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the Veteran's claims file, or, in the alternative, the entire claims file, must be made available to the examiner for review.

3. Thereafter, the AOJ should review the opinion to ensure that it is responsive and in compliance with the directives of this remand. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. 

4. After completing the above, and any other development deemed necessary, the AOJ should readjudicate the claim based on the entirety of the evidence. If the benefit sought on appeal is not granted, the Veteran and his representative should be provided with a Supplemental Statement of the Case. An appropriate period of time should be allowed for response. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).







(CONTINUED ON NEXT PAGE)
These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2014).



______________________________________________
ANTHONY C. SCIRÉ, JR.
 Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs